# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JANE REBECCA RIEBE, | ) CASE NO. 1:18-CV-1652 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

Plaintiff, Jane Rebecca Riebe ("Plaintiff"), challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 12). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On January 26, 2015, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of November 20, 2014. (Transcript ("Tr.") 250-262). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 169-196). Plaintiff participated in the hearing on May 17, 2017, was represented by counsel, and testified. (Tr. 36-94). A vocational expert ("VE") also

participated and testified. *Id*. On October 30, 2017, the ALJ found Plaintiff not disabled. (Tr. 28). On May 24, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On July 18, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 14).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly weigh the opinion of her physical therapist, and (2) the ALJ's credibility determination was deficient. (R. 13).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

Long before the November 20, 2014 alleged onset date, Plaintiff was diagnosed with multiple sclerosis (MS) in 2003 as noted in patient progress notes from October 17, 2014. (Tr. 386). Progress notes also indicate that Plaintiff received Avonex treatment from 2003 until early 2012, when they were stopped due to insurance issues, but resumed in December 2012. (Tr. 387). The treatment was again discontinued in February of 2013 due to disease progression. *Id*.

On October 17, 2014, Plaintiff was seen by Carries Hersh, M.D. (Tr. 386-388). Dr. Hersh noted Plaintiff's left leg weakness was stable compared to her last visit, spasticity was mildly

---

[1] The recitation of the evidence is not intended to be exhaustive. Plaintiff's brief expressly states that she is not challenging the ALJ's mental RFC finding; and, and as such it included only portions of her mental health treatment history. (R. 13 at PageID# 1088). Therefore, the court foregoes any recitation of Plaintiff's mental impairments as not germane to the assignments of error raised. Furthermore, as the assignments of error are largely predicated upon the weight ascribed to the medical opinions of record, the Court focuses on those opinions rather than the largely undisputed treatment records.

improved, and her gait was a bit more stable with use of a single-prong cane outside the home. (Tr. 387). She ambulated independently inside the home with no recent falls. *Id*. Dr. Hersh noted Plaintiff was obese, had mild left drift on motor examination, and a "[s]ubtle decrease in left hand grip (improved compared to last visit)." (Tr. 388). Her gait revealed improved stamping/steppage and spastic gait mildly improved but still demonstrating "left foot inversion AFO, mildly ataxic." (Tr. 389). Her MS was noted as clinically and radiographically stable on Tysabri treatment, which she was tolerating well. (Tr. 390).

On November 8, 2014, Plaintiff was seen by Carl Culley, M.D., for complaints of sore throat and cough. (Tr. 349). Dr. Culley noted Plaintiff's general appearance was normal, and diagnosed sore throat, bronchitis, MS, and immunosuppressed status. (Tr. 349-350).

On November 7, 2014, Plaintiff received a second set of Botox injections following an earlier set from August 12, 2014. (Tr. 375). Plaintiff reported the injections had been effective with less stiffness, improved ability to walk, and less spasms. *Id*. She rated her current pain as 3 or 4 out of ten currently, and 6 or 7 at its worst. *Id*. She reported performing stretching exercises at least once daily. *Id*.

On April 10, 2015, Plaintiff saw Frederick Frost, M.D., at the Gait and Mobility Clinic for a "falls" evaluation. (Tr. 750). Plaintiff's gait was non-antalgic, her stride length was reduced, pelvic rotation was poor, knee flexion at mid stance was reduced, tandem gait was impaired, and her ankle/heel strike pattern was poor on the left with a standard cane. (Tr. 752).

On April 23, 2015, and MRI of the Plaintiff's brain revealed stable moderate lesion burden compared with a prior MRI from October of 2014. (Tr. 746). There were "no new/enlarging T2 lesions nor gad-enhancing lesions [though] [m]ultiple lesions appeared dark," as well as mild cerebral volume loss. *Id*.

On March 14, 2016, Plaintiff was seen by physical therapist Matthew H. Sutliff, PT, at the referral of Keith McKee, M.D., for gait and balance training. (Tr. 863-867). Plaintiff reported difficulty ambulating with bilateral foot drop. (Tr. 863).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On October 22, 2014, long before being referred to Sutliff for physical therapy, Plaintiff was seen by him for a functional capacity evaluation at the behest of the Ohioans with Disabilities Agency to determine Plaintiff's readiness to return to work. (Tr. 380). Plaintiff assessed her mid and low back pain as a 3 on a 10-point scale. *Id*. She stated her pain occurs intermittently. *Id*. She reported exercising at s fitness center two to four times per week. *Id*. She reported falling one week earlier after being distracted and missing a step. *Id*. Plaintiff reported one spasm or fewer per day, being able to stand for 30 minutes, sit all day long so long as she can stretch every 20 minutes, never squat or kneel, bend 2 to 3 times, and reach overhead 10 times with 20 pounds. (Tr. 381). Upon examination, Plaintiff was able to go from standing to sitting without using her hands and stabilized independently. (Tr. 382). Mr. Sutliff indicated Plaintiff had moderate instability with gait, and had a spastic and paretic gait. *Id*. She could walk 25 feet in 9.12 seconds, an improvement from 13.58 seconds in March 2014. (Tr. 383). She was unable to tandem, heel, or toe walk, crawl, or climb ladders. *Id*. She had tremors in her hands (left greater than the right), and her left grip strength was in the 57th percentile while her left grip strength was in the 28th percentile. *Id*. Mr. Sutliff encouraged Plaintiff to apply for social security disability benefits. (Tr. 385).

On May 4, 2015, State Agency physician Theresa March, D.O., completed a physical RFC assessment, indicating Plaintiff could lift up to 10 pounds both frequently and occasionally, stand/walk for 2 hours, and sit for 6 hours in an 8-hour workday. (Tr. 102). She opined Plaintiff

could occasionally climb ramps/stairs, stoop, and crouch; but never crawl, kneel, or climb ladders/ropes/scaffolds. (Tr. 103). Plaintiff had limited ability to reach overhead, in front, or laterally with her left hand, but had unlimited ability to handle, finger, and feel. *Id*. Finally, she indicated Plaintiff should avoid concentrated exposure to extreme heat and all exposure to hazards. (Tr. 104).

On August 13, 2015, Dr. Keith McKee completed a one-question form by checking a box indicating that "yes" he agreed that Plaintiff's MS resulted in "sensory disturbances, ataxia, paralysis, tremor OR other involuntary movements, resulting in sustained disturbance of gross and dexterous movements, OR gait and station" in the left arm and left leg. (Tr. 782).

On September 10, 2015, State Agency physician Maureen Gallagher, D.O., reviewed the record and completed a physical RFC assessment echoing Dr. March's findings. (Tr. 137-139).

On May 1, 2017, Mr. Sutliff completed a checklist style questionnaire indicating that Plaintiff would miss three or more days of work per month due to fatigue, that she could stand for less than three hours and sit more than five hours in a workday, that she needed a cane for ambulation and standing, and that she needed more than six minutes of break time per hour. (Tr. 983). Finally, he opined her left upper extremity numbness and weakness would constantly interfere with fingering and handling. *Id*. There is no indication whether Mr. Sutliff had seen Plaintiff since physical therapy on March 14, 2016. *Id*.

**B. Relevant Hearing Testimony**

At the May 17, 2017 hearing, Plaintiff testified as follows:

- She completed college with a Bachelor of Arts degree in education and allied professions. (Tr. 46).

- She is 5'3" tall and weighs 250 pounds. (Tr. 47).

- She is unable to work because she becomes exhausted very easily, she has left-sided weakness, and has days where her whole body hurts. (Tr. 61). She requires more time to finish any task accurately. (Tr. 62).

- She has leg brace called an AFO, which supports the bottom of her foot to help her walk better. She uses a cane for short distances, and a rollator for longer distances of 25 feet or more. (Tr. 63-64). She does not use her cane at home, and goes "furniture to furniture." (Tr. 65). Her described walking abilities represent an improvement since she has been taking Amphyra. (Tr. 74).

- She helps cook, washes dishes, does laundry, cleans "the surface stuff," plants flowers in her garden. (Tr. 66-67).

- In 2014, she was terminated from three separate jobs in a seven-month period based on her performance. (Tr. 70-71).

- She becomes exhausted after 25 minutes of activity and needs to sit or lay down. (Tr. 74).

- She experiences sudden urgency with urination, and goes every thirty minutes whether she needs to or not in order to prevent accidents. (Tr. 78).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the

claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since November 20, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis (MS), obesity, and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant lift/carry and push/pull up to 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand/walk for a total of 2 hours and sit for a total of 6 hours in an 8-hour workday. The claimant can occasionally push/pull with the left upper extremity and left lower extremity. The claimant can frequently perform left reaching overhead and reaching in front or laterally. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop and crouch; and never kneel or crawl. The claimant can have frequent exposure to extreme heat. She can never have exposure to hazards. The claimant is limited to simple, routine tasks, but not a production rate pace. The claimant is limited [to] routine workplace changes. The claimant requires the use of an assistive device to and from work, but is capable of ambulating without an assistive device once indoors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on *** 1969 and was 44 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-28).

**V. Law and Analysis**

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 FDA 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Opinion of Physical Therapist Sutliff**

In the first assignment of error, Plaintiff asserts the ALJ failed to properly apply agency policy and Sixth Circuit precedent when addressing the opinion of Plaintiff's physical therapist, Mr. Sutliff, and failed to apply the treating physician rule. (R. 13, PageID# 1099-1108). The Commissioner responds that physical therapists are not considered "acceptable medical sources"

and, therefore, cannot constitute treating sources. (R. 14, PageID# 1116-1120).

A physical therapist is a "non-acceptable medical source," and an ALJ is "not required to give [a physical therapist's] opinion any particular weight." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 249 (6th Cir. 2015); *accord Knott v, Comm'r of Soc. Sec.*, No. 5:18-CV-1226, 2019 WL 4143885, at *11 (N.D. Ohio June 27, 2019), *report and recommendation adopted*, 2019 WL 4142596 (N.D. Ohio Aug. 30, 2019); *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *4 (E.D. Mich. June 10, 2019), *report and recommendation adopted*, 2019 WL 2647260 (E.D. Mich. June 27, 2019); *see also Perschka v. Comm'r of Soc. Sec.*, 411 Fed. App'x 781, 787 (6th Cir. 2010) (regulations do not include physical therapists in the list of acceptable medical sources). In other words, there is "no requirement" that the ALJ give good reasons for the weight assigned to a physical therapist, because that standard "applies only to 'treating sources' (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation)." *Roberts v. Comm'r of Soc. Sec.*, No. 1:14-CV-355, 2015 WL 3936177, at *4 (W.D. Mich. June 26, 2015).

Although physical therapists are not "acceptable medical sources" under the regulations, Social Security Ruling ("SSR") 06-03p, notes that information from "other sources," such as physical therapists, "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). A recent decision from within this district explained the ALJ's duties in connection with opinions from "other sources" as follows:

> In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded

"other source" opinions provides:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case.* In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.
>
> SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).

Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03P). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."** *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.)

(emphasis added).

Here the ALJ did not ignore physical therapist Sutliff's opinions or silently consider them. Instead, the ALJ provided the following explanation concerning the weight accorded to Sutliff:

> The claimant's physical therapist, Matthew Sutliff, DPT, completed a medical source statement in the form of a questionnaire, supplied by the claimant's representative (Exhibit 11F). Mr. Sutliff opined that the claimant's fatigue would cause her miss three or more days of work per month; she would be limited to standing to less than three hours and sitting more than five hours in an eight-hour workday; and she requires a cane for safe ambulation and standing. Further, Mr. Sutliff opined that the claimant would need unscheduled breaks more than six minutes per hour and her left upper extremity numbness and weakness would constantly interfere with fingering and handling (Exhibit 11F, 1). I assign less weight to this medical source statement. Although Mr. Sutfliff's opinion regarding the claimant's capacity for sitting and standing is generally consistent with the weight of the evidence, this questionnaire contains no rationale to support his conclusions. His opinions regarding number of absences and need for breaks, and limitations in handling and fingering appear to be an overstatement of the claimant's limitations. For example, the claimant testified that she uses the [sic] regularly uses the internet to look for part-time work, she prepares and chops food while seated, and she does laundry and fold clothes. These activities appear wholly inconsistent with Mr. Sutliff's opinion that the claimant's symptoms would "constantly" interfere with her fingering and handling on the left. Further, as a physical therapist, [sic] is not an "acceptable medical source" under 20 CFR 404.1513(a) and is instead considered another source.
>
> In sum, the above residual functional capacity assessment is supported by the assessments of the State agency medical and psychological consultants, the longitudinal treatment records and response to treatment, and evidence of the claimant's daily living activities.

(Tr. 26).

The decision clearly demonstrates that the ALJ did not ignore Sutliff's opinion. To the contrary, the ALJ explained why she assigned his opinion little weight. Although Plaintiff plainly takes issue with the explanation provided, it is not this Court's function to re-weigh the opinions of record. Further, the Court declines to extend the "good reasons" requirement of the treating physician rule to a "non-acceptable medical source." Moreover, the decision reasonably

identifies the lack of any meaningful explanation within Sutliff's opinion as to why he was assessing such limitations. Plaintiff's suggestion that the ALJ dismissed Sutliff's opinion solely because he was not an "acceptable medical source" is belied by the express language of the decision. (R. 13, PageID# 1106). Furthermore, in *Noto*, the Court of Appeals found that the most compelling reason for the ALJ not to give significant weight to the physical therapist's opinion was its inconsistency with the opinions of the State Agency physicians. 632 F. App'x at 249. Here, the ALJ also opted to ascribe greater weight to the State Agency physicians who do constitute acceptable medical sources. (Tr. 24).

Finally, in a footnote, Plaintiff asserts physical therapist Sutliff received a doctorate in physical therapy in 2017. (R. 13, PageID# 1097). Plaintiff, however, cites no authority suggesting that even a doctorate degree in physical therapy would confer "acceptable medical source" status upon Sutliff. Even assuming *arguendo* that it does, Plaintiff fails to establish that Sutliff actually treated her *after* he received his doctoral degree.

**2. Credibility Assessment**

Plaintiff's second assignment of error asserts the ALJ's credibility determination was contrary to law and failed to follow applicable regulations and social security rulings (SSRs). (R. 13, PageID# 1108-1110). The Commissioner responds that the ALJ properly considered Plaintiff's subjective statements. (R. 14, PageID# 1120-1123).

The ALJ's decision is dated October 30, 2017, and SSR 16-3p —Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017)—applies to this action because it superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996) with respect to "determinations and decisions on or after March 28, 2016." According to SSR 16-3p (as well as SSR 96-7p), evaluating an individual's alleged symptoms entails a two-step process that involves first

deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *2-3. "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

The ALJ's decision found the first step was satisfied and states that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 21). After step one is satisfied, an ALJ—when considering the intensity, persistence, and limiting effects of an individual's symptoms—should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional

limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p). The ALJ concluded that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 25).

An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p at *10.[2] Rather, an ALJ's "decision must contain specific

---

[2] SSR 16-3p merely replaced the term "credible" in this sentence from SSR 96-7p with the terms "supported or consistent." 2016 WL 1119029 at *9.

reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

Though the decision would have benefited from a more unified analysis of the credibility of Plaintiff's symptoms, the court reads the decision as a whole. Plaintiff does not argue that the ALJ failed to discuss of any of the seven factors, but only that "Agency policy set forth in 20 C.F.R. § 404.1529(c)(3) and SSRs 96-8p and 96-7p requires consideration of a claimant's demonstrated *willingness to work* as part of the credibility assessment." (R. 13, PageID# 1109) (emphasis added).

SSR 96-8p states that "[t]he RFC assessment must be based on all of the relevant evidence in the case record, such as: … "[e]vidence from attempts to work." 1996 WL 374184 at *5 (July 2, 1996). Meanwhile, 20 C.F.R. § 404.1529(c)(3) states the Commissioner "will consider all of the evidence presented, including information about your prior work record…." The decision expressly mentions Plaintiff's prior work history, including work after the alleged onset date that did not rise to substantial gainful activity, as well as Plaintiff's job-seeking activities. (Tr. 17, 19, 21, 24, 26, 28). Therefore, the decision demonstrates that the ALJ *considered* all the evidence presented. Consideration, however, does not necessarily entail an explicit analysis. *See, e.g., Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant's] work history when assessing his credibility."); *accord*

*Stephens v. Berryhill*, No. 3:16-CV-02476, 2018 WL 1386753, at *4 (M.D. Tenn. Feb. 28, 2018) (finding no merit to claimant's credibility argument that relied exclusively on the ALJ's alleged failure to consider his exemplary work history based on Sixth Circuit's holding in *Dutkiewicz*), *report and recommendation adopted*, 2018 WL 1378559 (M.D. Tenn. Mar. 19, 2018).

Finally, to the extent Plaintiff would argue that her "willingness to work" is a distinct consideration from her "prior work record" or "attempts to work," neither SSR 96-8p nor 20 C.F.R. § 404.1529(c)(3) require discussion of such a factor. In addition, as stated above SSR 96-7p was superseded by SSR 16-3p. Although the court has stated that it views the changes in the latter as largely semantic, the first footnote to SSR 16-3p states that the "[Administrative Conference of the United States] ACUS recommended we consider amending SSR 96-7p to clarify that subjective symptom evaluation is *not* an examination of an individual's *character*, but rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work." (emphasis added). Plaintiff's assertion that the she is willing to work but cannot, by inference, seeks to differentiate herself from individuals who may be seeking disability for secondary gain despite retaining the ability to work. This assertion meanders into the category of assessing a claimant's character rather than the evidence supporting their alleged symptoms. While it is not entirely clear under SSR 16-3p whether such a consideration is altogether prohibited, nothing in SSR 16-3p suggests that such a consideration is mandated and that failure to do so justifies a remand. Thus, Plaintiff's second assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

                                           s/ David A. Ruiz
                                           David A. Ruiz
                                           United States Magistrate Judge

Date: September 23, 2019